UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 17-5095
(C.A. No. 17-0310)

DAVID PULPHUS, et al.,                                                                    Appellants,

      v.

STEPHEN T. AYERS, in his official capacity
as Architect of the Capitol,                                                              Appellee.

## REPLY TO APPELLANTS' OPPOSITION TO APPELLEE'S MOTION TO DISMISS APPEAL AS MOOT

Appellee Stephen T. Ayers, Architect of the Capitol ("Architect"), has moved to dismiss as moot this appeal of the denial of Appellants' motion for a preliminary injunction, seeking to compel the Architect to rehang a painting by David Pulphus in the tunnel connecting the Cannon House Office Building to the U.S. Capitol Building (i.e., the "Cannon Tunnel") until the end of the 2016 Congressional Art Competition. This present appeal is moot because the 2016 Competition has concluded, and it is undisputed that the painting is no longer eligible to be hung on the tunnel wall.

Appellants argue, however, that a favorable ruling would purportedly result in the Pulphus painting being displayed in a virtual exhibition on the website of the non-party Congressional Institute, a co-sponsor of the Competition, and that they

are suffering ongoing reputational harm from the disqualification of the Pulphus painting. Representative Clay further contends that his challenge to the Competition's suitability guidelines continues to present a live controversy, capable of repetition. Appellants are mistaken on all counts.

As a threshold matter, this appeal concerns whether Appellants' claims for emergency injunctive relief are moot, not whether the entire case is moot, a distinction between two discrete issues Appellants ignore. Although the case itself may well be moot, the only issue with respect to Appellee's motion is whether Appellants would gain any meaningful relief if the District Court's denial of the specific relief requested were reversed. Because Appellants requested only a preliminary injunction requiring the Architect to rehang the Pulphus painting on the Cannon Tunnel wall during the 2016 Competition, and they concede that this action can no longer occur, their appeal of the denial of this relief is moot.

Recognizing this fact, Appellants pivot and raise for the first time claims of different injuries, to be redressed by different relief, sought against different parties not even involved in this case. It is too late to reframe their request for preliminary injunctive relief. Nonetheless, the new relief they seek cannot save their appeal from dismissal as moot.

Appellants now speculate that if this Court were to reverse the District Court's decision, the Congressional Institute—a private organization not a party to

this suit—would display the Pulphus painting on its website with the other 2016 Competition winners.  Appellants offer no evidence as support, and there is no reason to expect that the Institute would change its own conduct based on a preliminary injunction against the Architect, which does not entail a final determination that Appellants' rights have been violated.

Appellants' claim of reputational harm was not raised as a basis for the entry of a preliminary injunction and thus cannot be advanced now as a ground for pursuing this appeal.  Moreover, the primary reputational harm they claim to suffer – being considered "anti-police" by certain groups – would not be ameliorated by a reversal on appeal.  This alleged injury stems from people's reaction to the painting, not the Architect's determination that the painting did not meet the Competition's suitability guidelines.  Moreover, because a preliminary injunction is not a final determination of the merits, it would fail to remedy the kind of reputational harm that they allege.

Finally, the suitability guidelines Appellants challenged are no longer being applied to them and there is no evidence that these guidelines will be applied to exclude Representative Clay's selection from the 2017 Congressional Art Competition or any future competitions.  Moreover, even if they were, the Architect would not be the person applying them; that responsibility now belongs exclusively to the House Office Buildings Commission ("HOBC"), a

Congressional entity that is not a party to this case. Any injunction against the Architect could not apply to the HOBC without giving its constitutional officers their day in court through notice and an opportunity to be heard.

Thus, this appeal warrants dismissal as moot.

## ARGUMENT

### 1. Appellants' Claim for Preliminary Injunctive Relief Became Moot with the Conclusion of the 2016 Exhibition.

Appellants sought a preliminary injunction requiring the Architect to reverse his decision disqualifying the Pulphus painting, which they claimed violated their First Amendment rights, and to require the painting rehung "in the Cannon Tunnel alongside the other winning entries until the expiration of the 2016 Competition display period or the conclusion of this litigation on the merits, *whichever is sooner*." R.7 at 4-5 (emphasis added). Thus, the relief sought by Appellants was directed solely at the Architect and was expressly confined both to the duration of the 2016 exhibition and to the Cannon Tunnel. Id. at 2. Appellants do not dispute that the 2016 Competition has ended and that the artworks for that competition have been removed from the Cannon Tunnel. Their requested preliminary injunction is thus moot.

Appellants attempt to manufacture a new alleged ongoing harm, pointing to the omission of the Pulphus painting from the virtual display of the 2016

Competition winners found on the website of the Congressional Institute, a private non-profit corporation that offers certain assistance to Members of Congress. R.11-1, Ayers Decl., Ex. 2 at 3. Appellants speculate that an order reinstating the Pulphus painting would lead the Congressional Institute to display this painting on its website. Opp. at 12.

Appellants cite no support for their assertion that the entry of a preliminary injunction against the Architect would cause the Congressional Institute to change its website; mere speculation cannot overcome a showing of mootness. Munsell v. Dep't of Agric., 509 F.3d 572, 583 (D.C. Cir. 2007). It is particularly speculative to conclude that the Congressional Institute would reinstate the Pulphus painting solely based on a preliminary injunction in a case in which the Institute is not a party, has had no involvement in the arguments advanced, and is not itself subject to the decision. Cf. American Library Ass'n v. Odom, 818 F.2d 81, 86 (D.C. Cir. 1987) (no standing to challenge government disclosure restrictions affecting non-party private library where plaintiffs failed to show that library would disseminate if restrictions were lifted). This is especially true given that a preliminary injunction does not entail a final determination of the merits. See University of Texas v. Camenisch, 451 U.S. 390, 395 (1981).

Appellants also claim that, because the Congressional Institute is a co-sponsor of the Competition, it would be subject to an injunction in this case under

5

Rule 65(d)(2) of the Federal Rules of Civil Procedure, which is binding on persons who "are in active concert or participation" with the party enjoined. Opp. at 22, n.6. Appellants point to no evidence that the Institute acted in concert with the Architect either in applying the suitability guidelines or in creating the Institute's virtual exhibition. But even if active concert could be established, under Rule 65(d)(2) the Institute would be bound only by the preliminary injunction requested by Appellants—an injunction directed at the Cannon Tunnel and limited to the duration of the now-completed 2016 exhibition. Appellants never requested a preliminary injunction requiring the Congressional Institute to alter its own website, and it is too late to raise that claim on appeal. Ellipso, Inc. v. Mann, 480 F.3d 1153, 1157-58 (D.C. Cir. 2007). Finally, an injunction requiring the Congressional Institute to include the Pulphus painting on its website would violate the Institute's First Amendment rights by compelling a private party to engage in speech selected by the government, which is prohibited except in carefully limited circumstances not present here. See, e.g., Walker v. Tex. Div., Sons of Confederate Veterans, Inc., 135 S. Ct. 2239, 2253 (2015) ("[T]he First Amendment stringently limits a State's authority to compel a private party to express a view with which the private party disagrees.").

Thus, Rule 65(d) would not extend any preliminary injunction to the Congressional Institute, and there is no basis for concluding that the entry of such

an injunction would result in the Pulphus painting being displayed on the Institute's website.

### 2. Appellants' Belated Claims of Reputational Injury Do Not Save Their Preliminary Injunction Appeal From Being Moot.

Appellants next argue that they are suffering ongoing reputational injury associated with the disqualification of the Pulphus painting. Opp. at 14-17. Appellants, however, did not claim below that they needed preliminary injunctive relief in order to redress reputational harm. The only harm they alleged in the District Court in support of their motion was a loss of their First Amendment rights. R. 7-1 at 37. Appellants cannot for the first time on appeal raise a new claim of harm to support a motion for a preliminary injunction. See Ellipso, 480 F.3d at 1157-58. Moreover, the preliminary injunctive relief requested below would not redress the new purported reputational harms advanced by Appellants.

Appellant Pulphus claims that the disqualification of his painting branded his art as "'unfit for the Capitol' and 'unsuitable'" for display and was called "'disgusting'" by the Speaker of the House. Supplemental Declaration of David Pulphus, ¶ 3. He also claims that unidentified persons have labeled him as "anti-police." Id. at ¶ 4. Appellant Clay argues that his harm stems from being the target of negative comments on social media and being labeled "'anti-police'" for having selected the Pulphus painting. Supplemental Declaration of Representative William Lacy Clay ("Supp. Clay Decl."), ¶ 11. Representative Clay further claims

7

that being associated with guidelines that he believes "promote[] censorship and viewpoint discrimination" further damages his professional reputation. Id. at ¶ 16.

The reputational harms Appellants claim to suffer, however, constitute "the lingering effect of an otherwise moot aspect of the lawsuit, [for which] no meaningful relief is possible and [thus] the injury cannot satisfy the requirements of Article III." Foretich v. United States, 351 F.3d 1198, 1212 (D.C. Cir. 2003). The Pulphus painting was found unsuitable for the 2016 Competition because it was deemed to violate the prohibition against "exhibits depicting subjects of contemporary political controversy or a sensationalistic or gruesome nature." R.11-1, Ayers Decl., ¶ 11 & Ex. 6. Appellants do not argue that the painting did not fit within this prohibition. Instead, they argue that the prohibition unconstitutionally allowed the Architect to engage in viewpoint discrimination in violation of the First Amendment. See Opp. at 8.

A preliminary injunction finding that the Architect likely engaged in unconstitutional viewpoint discrimination would not change the fact that the painting was found to violate the requirements for display in a Congressional Art Competition, nor would it change the fact that some groups consider the painting anti-police. Such views were formed, publicly expressed, and remain as a matter of public record.

This is far different from McBryde v. Comm. To Rev. Cir. Council Conduct, 264 F.3d 52 (D.C. Cir. 2001), where this Court noted that an order declaring unlawful stigmatizing reports, which had formed the basis of a publicly posted reprimand, would relieve the plaintiff of much of his reputational injury. Id. at 57. Here, by contrast, a preliminary injunction would have no effect on any concerns about the content of the Pulphus painting expressed by various groups of individuals. See Opp. at 14. Because Appellants' reputational injuries stem predominantly from those concerns, they would not be remedied by the injunction sought. And even if the negative views of third parties toward the painting could be attributed to the Architect's decision, they would constitute at most "a *collateral* consequence" of the challenged action, which "the Supreme Court has suggested . . . is insufficient to support standing or, presumably, to escape mootness." McBryde, 264 F.3d at 57 (emphasis in original), *citing* Spencer v. Kemna, 523 U.S. 1, 16-17, n.8 (1998).[1]

### 3. Representative Clay's Injuries are not Capable of Repetition.

Appellants argue that Representative Clay's challenge to the suitability guidelines, and his purported resulting injuries from their application, are capable

---

[1]  Representative Clay's claim that he is suffering reputational harm from being associated with alleged unconstitutional suitability guidelines also fails because entry of a preliminary injunction would not constitute a ruling on the merits of those guidelines. Camenisch, 451 U.S. at 395.

9

of repetition because it is likely that he will again face viewpoint discrimination in the Congressional Art Competition. Opp. at 19. Appellants cite no evidence to support this speculation. Id. at 20. Representative Clay has participated in the Congressional Art Competition every year since 2000, Supp. Clay Decl. ¶ 3, yet he does not allege that any prior painting he selected was disqualified for violating the suitability guidelines. Id. Under these circumstances, Appellants have failed to demonstrate "a reasonable expectation" that Representative Clay "will be subject to the same action again." Cierco v. Mnuchin, 857 F.3d 407, 415 (D.C. Cir. 2017).

Moreover, the controversy between Representative Clay and the Architect cannot recur because Appellants concede that the Architect will no longer apply the suitability guidelines, as that role now will be performed exclusively by the HOBC. Appellants argue that the HOBC is the successor in interest to the Architect and that the possibility of a future dispute between Representative Clay and the HOBC suffices to support a preliminary injunction. Opp. at 21. Appellants' leap from an injunction against the Architect to an injunction against the HOBC falls far short of the mark, for the shift in authority over the guidelines from the Architect to the HOBC is fundamentally different from the substitution of one public official for another.

The Architect is appointed by the President for a term of ten years. 2 U.S.C. § 1801(a)(1). The Architect does not participate in lawmaking, like the Members

of the HOBC, and he may not be dismissed by Congress. Bell BCI Co. v. United States, 56 Fed. Cl. 465, 467 (Fed. Cl. 2003).

By contrast, the members of the HOBC consist of the House Speaker, and two Members of Congress appointed by the Speaker. R. 11-1, Ayers Decl., ¶¶ 4, 28. These are constitutionally elected officials of Congress who have specific constitutional defenses available to them that are not available to the Architect, including the Speech or Debate Clause, the Rulemaking Clause, and Congressional sovereign immunity. See, e.g., Gravel v. United States, 408 U.S. 606, 625 (1972) (Speech or Debate Clause protects not only "speech or debate in either House" but also "other matters which the Constitution places within the jurisdiction of either House"); Anderson v. Dunn, 19 U.S. 204, 229 (1821) (each house of Congress has "absolute control within its own walls"); Consumers Union of U.S., Inc. v. Periodical Correspondents' Ass'n, 515 F.2d 1341, 1347, 1351 (D.C. Cir. 1975) (rejecting as nonjusticiable a challenge to implementation of House and Senate rules regarding access to congressional galleries); Mississippi v. Johnson, 71 U.S. 475, 500 (1866) (Congress cannot be restrained in its actions by the judiciary).[2]

---

[2] In addition, under 2 U.S.C. § 5571, House Members have the right to be represented by their own counsel in litigation. A ruling that the HOBC would be bound by an injunction in a case in which the plaintiffs declined to sue the HOBC would eviscerate this right.

Appellants' suggestion that the District Court could enjoin the HOBC under Rule 65(d) presents serious separation of powers issues. Appellants point to no authority that the courts could treat a presidentially appointed official such as the Architect as interchangeable with constitutional officers like the Speaker of the House and its Members, and thereby render the latter subject to an injunction solely through a rule of civil procedure.

Because the Architect will no longer be applying the suitability guidelines, the dispute concerning these guidelines is not capable of repetition.

## CONCLUSION

For the foregoing reasons, and those set forth in Appellee's opening motion, Appellee respectfully requests that Court dismiss this appeal of the District Court's decision as moot.

Respectfully submitted,

CHANNING D. PHILLIPS
United States Attorney

R. CRAIG LAWRENCE
Assistant United States Attorney

*/s/ Marina Utgoff Braswell*
MARINA UTGOFF BRASWELL
Assistant United States Attorney

SCOTT R. MCINTOSH
Appellate Counsel

Constitutional Litigation
Civil Division

## CERTIFICATE OF COMPLIANCE
## FRAP 32(g)(1)

I HEREBY CERTIFY that the text for Reply to Appellants' Opposition to Appellee's Motion to Dismiss Appeal as Moot was prepared using Times New Roman, 14-point font and contains 2581 words.

>  /s/ *Marina Utgoff Braswell*
> MARINA UTGOFF BRASWELL
> Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of July, 2017, the foregoing Reply to Appellants' Opposition to Appellee's Motion to Dismiss Appeal as Moot has been served by this Court's Electronic Case Filing System ("ECF").

>  /s/ *Marina Utgoff Braswell*
> MARINA UTGOFF BRASWELL
> Assistant United States Attorney